IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ANTHONY LEE VINES,             ]
                               ]
         Plaintiff,            ]
                               ]
  v.                           ]   No. 2:12-CV-
                               ]
KENNAMETAL, INC.,              ]
                               ]
         Defendant.            ]

**COMPLAINT**

1. This Court is authorized to hear the plaintiff's federal statutory employment discrimination claims pursuant to its federal question jurisdiction codified at *28 U.S.C. §1331*. The plaintiff's discriminatory discharge claims are premised upon the provisions of The Family and Medical Leave Act (FMLA) codified at *29 U.S.C. §2612, §2614, §2615,* and *§2617* and the Americans With Disabilities Act (ADA), as amended, and codified at *42 U.S.C. §12102, §12111, §12112,* and *§12117*.

2. Plaintiff Anthony (Tony) Lee Vines is a white male 48-years-of-age. He resides in Carter County, Tennessee. The plaintiff suffers from the disability of diabetes. He takes medication to control his symptoms as much

as possible so that he can continue to work. At the times pertinent to his claims for ADA and FMLA discrimination in employment, the plaintiff was employed by, and was discriminatorily discharged, by Kennametal, Inc.

3. Defendant Kennametal, Inc., is a global provider of metal cutting tools, engineering components, and advanced materials which are consumed in production processes in industries such as aerospace, automotive, construction, and power generation and transmission. The company's headquarters is located in Latrobe, Pennsylvania. The company employs more than 11,000 individuals and operates in dozens of countries. Kennametal operates a machining facility in Johnson City, Tennessee, where the plaintiff was employed. The defendant's registered agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710.

4. Plaintiff Vines was employed as a machine operator by Kennametal from 1995 until the company discriminatorily discharged him on August 31, 2010. The plaintiff could operate all of the tooling machinery on the defendant's production floor and regularly received excellent evaluations. Mr. Vines routinely exceeded the production goals set by the company.

5. After he developed diabetes, the plaintiff became afflicted with cysts under the belt line on his abdomen. On occasions when the plaintiff's

blood sugar level rose significantly, the plaintiff would become light-headed and had difficulty seeing. Medication helped control these symptoms, but occasionally the plaintiff's diabetes completely disabled him from functioning.

      6. Because of the plaintiff's disability, he obtained a series of FMLA certifications for intermittent leave from work for as many as four days a month. The defendant and its FMLA agent, Liberty Mutual Insurance Company, repeatedly contacted the plaintiff in writing during 2010 regarding his FMLA intermittent leave certifications related to his diabetic disability. Shortly before it discriminatorily discharged the plaintiff, defendant Kennametal required the plaintiff to fill out, sign, and submit FMLA Leave Service Tracking Reports to his supervisor. The defendant had actual notice of the plaintiff's disability and the intermittent medical leave which was required to accommodate his disability under the FMLA.

      7. Plaintiff Vines worked on the defendant's night shift. Most of his diabetic-related episodes of dizziness and vision impairment occurred in the early evening hours. But late one evening in February 2010, the plaintiff's blood sugar level rose while he was driving to work and the plaintiff lost his ability to focus his vision. The plaintiff had to park his automobile and use his cell phone to call his supervisor, explain his situation, get a ride home, and then take medical leave for the workday.

8. The plaintiff discussed moving to the day shift in order to better accommodate his disability symptoms with his supervisor during 2008-2009. But supervisor Dennis Vaughn discouraged the plaintiff from formally requesting a transfer by insisting that the company would have to transfer a day shift employee to the night shift to replace the plaintiff. There was an open swing-fixture machine on the day shift which the plaintiff could have operated at the time.

9. On August 27, 2010, the plaintiff was working the night shift. He had been assigned to operate the company's Brown & Sharp grinder at a different work station than usual. At the time, the plaintiff was suffering from acute abdominal cysts which required that he periodically apply medicine to them. The plaintiff had to make several trips to the restroom that night, including his dinner break time, to apply the medication. He was not aware that the defendant had placed him under special surveillance and that the defendant's supervisor was noting each time the plaintiff had to be away from his machine. The plaintiff's efficient operations put him ahead of schedule on his production quota for the night shift.

10. After the plaintiff's 2:00 a.m. lunch break, he began feeling dizzy and took two prescription tablets. He continued to run parts. By 3:30 a.m., the plaintiff had become nauseous and dizzy, and his vision began to

blur. Plaintiff Vines could not locate his group leader, and no co-workers were close-by at the time. Realizing that if he didn't sit down immediately he would fall down, the plaintiff got to the chair closest to his current work station. The chair was in the Dye Penetration Booth. The plaintiff sat down and rested his head in his hand.

11. A few minutes later, the defendant's group leader Mike Lovelace entered the booth and demanded that Mr. Vines return to his machine. Lovelace accused the plaintiff of being asleep. The plaintiff attempted to explain that he had become dizzy because of his high blood sugar and had to sit down. Even though the defendant knew that the plaintiff was suffering from diabetes and had been certified for FMLA intermittent leave because of its symptoms, Lovelace refused to accept the plaintiff's explanation and insisted that he return to his machine immediately. Though still dizzy, plaintiff Vines did as directed.

12. By 6:45 a.m. that same morning, the plaintiff had run a total of 320 parts in 7.5 hours. His goal for the night had been 18 3/4 parts per hour. Even though the plaintiff had been ill for the last half of his shift, his early efficiency enabled him to average 42 ½ parts per hour for the entire shift.

13. After the shift ended, Supervisor Dennis Vaughn escorted the

plaintiff to the company's office where they met with Department Manager Debbie Metcalfe. Vaughn took the plaintiff's company badge and announced he was being given a three-day suspension for not following Kennametal's policy. Manager Metcalf told the plaintiff that he had been abusing his bathroom breaks. The plaintiff explained to the defendant's managing agents that he went to the bathroom to doctor his diabetic cysts. When the plaintiff asked what company policy he had violated since he was a diabetic, Metcalf did not respond. When the plaintiff asked if the company were firing him, Ms. Metcalf said "no." Metcalf told plaintiff Vines to return to the company offices on August 31, 2010 and talk with the Human Resources staff.

      14. On August 31, 2010, the defendant had its plant manager Maynard Grieves meet with the plaintiff. Manager Grieves told Mr. Vines that his company files indicated he was on FMLA and was a diabetic. Grieves announced that based on what was in the plaintiff's files, the plant no longer needed him. When the plaintiff asked why he was being fired, Grieves responded that the plaintiff had not followed company policy. The plaintiff asked permission to show the plant manager his diabetic cysts as evidence of the problems he had been experiencing. Grieves announced that he did not want to see the plaintiff's cysts. The plaintiff asked what policy he had violated and explained that he had to sit down because his diabetes had made

6

him dizzy. Grieves insisted that the plaintiff was not being fired for taking FMLA or for being a diabetic. Plant Manager Grieves would not tell the plaintiff what policy he had allegedly violated.

15. In its illegal efforts to avoid accommodating the plaintiff and in violating his ADA and FMLA rights, the company deliberately failed to comply with its progressive discipline policy. The company had never warned the plaintiff he would be discharged for doctoring his diabetic cysts or for sitting down if he became dizzy. Other employees who violated company policies have been retained and another employee who was actually discovered sleeping on the job was not discharged. No company manager or supervisor offered to discuss accommodating the plaintiff's disability with him before the defendant discharged him.

16. In its administrative response to the plaintiff's EEOC charges, the defendant has claimed it did not consider the plaintiff to have a disability. Yet the defendant required the plaintiff to obtain intermittent-leave FMLA certifications and to complete FMLA Intermittent Leave Time Tracking Reports because of his disability shortly before it discharged him. To create a pre-textual justification for its discharging the plaintiff, the defendant has also claimed that the plaintiff was simply "sleeping" on the job. The defendant misrepresented to the EEOC that there were chairs closer to the

plaintiff which he could have used if he were dizzy from his diabetes. The company did not have any chairs scattered around the production floor. The chair in the Dye Penetration Booth was the closest chair to the plaintiff. Even though Mr. Vines had an excellent production record, the defendant illegally refused to accommodate his disability and then discharged him because he had a disability and because he required intermittent FMLA leave in order to be able to continue to work. The defendant's misrepresentations to the EEOC are evidence of pretext, mendacity, and employment discrimination.

17. By discharging the plaintiff under the circumstances described above, the defendant discriminated against the plaintiff in violation of the ADA and the FMLA, and also interfered with the plaintiff's FMLA entitlement. The discrimination and interference were deliberate, malicious, willful, and in reckless disregard of the plaintiff's federally protected rights. The defendant's employment discrimination caused the plaintiff to suffer lost wages and benefits. He will lose wages in the future. Mr. Vines has suffered embarrassment and humiliation, as well as stress and anxiety. His enjoyment of life has been diminished and his earning capacity has been impaired. The plaintiff is entitled to an award of lost wages and lost benefits under the ADA and FMLA, to an award of compensatory damages, to an award of punitive damages under the ADA, and to an award of liquidated damages under the

FMLA.

18. The plaintiff has filed his EEOC discrimination charges against the defendant, has been issued his right-to-sue letter, and has exhausted his administrative remedies.

WHEREFORE, THE PLAINTIFF DEMANDS:

1. Judgment against the defendant for all compensatory damages allowed under the ADA, as amended.

2. Judgment against the defendant for all punitive damages allowed under the ADA as amended.

3. An award of lost wages, lost employment benefits, and prejudgment interest.

4. Reinstatement to the plaintiff's prior position with appropriate accommodation under both the ADA, as amended, and/or the FMLA, or alternately, to an award of front pay.

5. Judgment against the defendant for all money damages and liquidated damages allowed by the FMLA.

6. A jury to try the plaintiff's claims.

7. An award of attorney's fees as the prevailing party under applicable federal law.

8. Such other relief which will make the plaintiff whole.

                                                s/ C. R. DeVault, Jr.
                                                CHARLTON R. DEVAULT, JR.
                                                TN BPR #000428
                                                102 Broad Street
                                                Kingsport, Tennessee
                                                (423) 246-3601

                                                ATTORNEY FOR THE PLAINTIFF